**SO ORDERED.**

**SIGNED this 18 day of January, 2008.**



_____
**JANICE MILLER KARLIN**
**UNITED STATES BANKRUPTCY JUDGE**
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| NORMA JEAN BINGHAM, | ) | Case No. 06-40990 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |

### MEMORANDUM ORDER AND OPINION SUSTAINING TRUSTEE'S OBJECTION TO DEBTOR'S EXEMPTIONS

This matter is before the Court on the Trustee's Objection to Debtor's Homestead Exemption and All Other Exemptions[1] and Trustee's Objection to Debtor's Amended Schedule C, Homestead Exemption.[2] This is a core proceeding[3] over which the Court has jurisdiction.[4]

_____

[1] Doc. 19.

[2] Doc. 29.

[3] 28 U.S.C. § 157(b)(2)(B).

[4] 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1).

The parties have filed a Stipulation of Facts[5] and briefs on the relevant issue. The briefs reveal that the parties now agree that Debtor cannot claim exemptions under Kansas law because she did not live in Kansas for two years prior to filing bankruptcy. The Trustee's objection to the exemptions claimed under Kansas law in both Schedule C and Amended Schedule C must, therefore, be sustained.

Although Debtor has not amended her Schedule C to claim exemptions under either Missouri or Texas law, the parties appear to agree that Debtor will nevertheless be entitled to claim a homestead exemption under Texas, Missouri, or federal bankruptcy law. The issue of whether the Court would sustain a possible future objection by the Trustee, to an amended Schedule C if Debtor were to file such a pleading, is therefore not a justiciable case or controversy over which this Court has jurisdiction.[6] In addition, the Stipulation of Facts does not provide sufficient information to allow the Court to determine whether Texas or Missouri law would apply.

That said, the Court has undertaken an analysis of the relevant law in order to fully understand the issues, and will share some of that research as guidance to assist the parties in analyzing this matter as they either prepare for trial on the domicile issue, or elect to draft a revised Stipulation of Facts that eliminates the factual dispute regarding Debtor's domicile during the relevant 180-day period.

---

[5]Doc. 60.

[6]*See Park Lake Resources LLC v. U.S. Dept. Of Ag.*, 197 F.3d 448, 450 (10th Cir. 1999) (noting that a case is not justiciable if it is not ripe for review, and the federal courts lack jurisdiction to rule on such cases).

2

## I. FINDINGS OF FACT

Debtor resided in Texas from October, 1999 until an unspecified date in June of 2004.[7] On May 19, 2004, the Debtor sold her Texas home, but leased the house back from the new purchasers through July 31, 2004. Debtor then used a portion of the Texas sale proceeds to purchase a new home in Missouri. On June 4, 2004, Debtor executed a contract with National Van Lines to move her personal property from Texas to Missouri; the company moved the property out of the Texas house on June 23, 2004 and arrived in Missouri a few days later.

The exact date on which Debtor actually arrived and moved into her new Missouri home is unclear. The stipulated facts instead note only that Debtor "traveled for approximately one month, staying in hotels and motels or with relatives before occupying the property in Rolla [Missouri]."

On March 30, 2006, Debtor sold her Missouri home and received $53,386.05 from that sale after accounting for closing costs and payment of the mortgage balance. Debtor then again traveled extensively, "living in motels for two to three months prior to moving to Kansas." On May 31, 2006, Debtor purchased a condominium in Topeka, Kansas for $60,000. She started moving into that condo on June 1, 2006. Debtor paid $30,854.63 at the

---

[7]Debtor filed a Statement of Financial Affairs (SOFA), under penalty of perjury. Question 15 on that SOFA concerns a debtor's prior address. It states: "Prior address of debtor ---If the debtor has moved within three years immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case...." The only address Debtor listed was 1413 Timber Lane Court, Rolla, MO 65401; she indicated she lived there "July, 2003-June 1, 2006." This answer is inconsistent with the parties' Stipulation, however, so the Court will assume that the SOFA was in error, because the Stipulation clearly shows Debtor lived in Texas during all of 2003, and about half of 2004.

3

closing on the condo purchase price, which was derived from the proceeds of the sale of her Missouri home.

On October 2, 2006, Debtor filed this Chapter 7 bankruptcy proceeding. Concurrent with filing her bankruptcy petition, she filed a Schedule C claiming several items of real and personal property exempt under Kansas law, including the Topeka condo she purchased four months earlier. On January 3, 2007, the Trustee objected to all Debtor's exemptions, claiming that Debtor was not entitled to any exemptions under Kansas law because she had not been domiciled in Kansas for 730 days prior to the filing the bankruptcy petition.[8] The Trustee asked that Debtor's Kansas exemptions be denied.

Debtor's first lawyer (who has since withdrawn) responded to the objection by simply stating that "Trustee has misinterpreted 11 U.S.C. 522(b)(3)(A), as well as Missouri homestead law and Kansas law, as well as placing undue emphasis on aspects of debtor's testimony, petition and schedules." The same day Debtor filed that response, however, she filed an Amended Schedule C, which appears to be identical in all respects to the one originally filed.[9] The Trustee then filed an objection to this Amended Schedule C, raising the same arguments previously raised to the original Schedule C, but only referencing the homestead exemption. The Court assumes that the earlier objection to the exemption of

---

[8] One of Debtor's claimed exemptions, her Social Security Retirement Income, was based not on Kansas law, but upon federal law, 42 U.S.C.A. § 407.

[9] Doc. 22. Debtor has provided no explanation for filing an identical Schedule C simultaneously with her response to the Trustee's objection to the original Schedule C.

4

miscellaneous personal property was waived by the Trustee, and that only the homestead exemption remains at issue.[10]

## II. ANALYSIS

Prior to the sweeping changes to the Bankruptcy Code made by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), 11 U.S.C. § 522(b)(2)(A) provided that a debtor could choose either the exemptions available in § 522(d) (unless the state law applicable to the debtor required that state law be applied) or the exemptions available under the

> "... State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place . . . ."[11]

In other words, where Debtor lived during the 180 days immediately before filing bankruptcy was the critical factor.

BAPCPA drastically changed the domicile requirements; a debtor may now exempt property under § 522(d) (again, unless state law prohibits such election) or under the

> "... State or local law . . . at the place in which the debtor's domicile has been located for the **730** days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place . . . ."[12]

---

[10]Trustee's support brief noted that "In particular the objection relates to the exemption of real estate located in Kansas...."

[11]11 U.S.C. § 522(b)(2)(A)(2004).

[12]11 U.S.C. § 522(b)(3)(A)(2007)(emphasis added).

5

In other words, a debtor must live in one state for two full years prior to filing a bankruptcy petition in order to claim that state's exemptions. If the debtor has not lived in one state for two years, the Court is required to ignore the two years immediately preceding the filing of the petition. Instead, the Court must determine in which state the debtor lived the greatest portion of the 180 days preceding such two year period.

This case was filed in Kansas, and both Debtor's original and amended Schedule C have attempted to use the expansive Kansas homestead exemption to preserve the equity in her condominium. The parties now stipulate, however, that Debtor was not domiciled in Kansas for 730 days prior to filing the bankruptcy petition, as required by the amended version of § 522(b).[13] For that reason, Kansas exemption laws are unavailable for Debtor's use.

The parties now agree that Debtor must instead utilize the exemptions allowed under Missouri, Texas, or federal law. This is because the amended § 522(b)(3)(A) provides that if a debtor has not been domiciled in one state for a full 730 days before filing a bankruptcy petition, the debtor will instead be entitled to use the exemption laws provided by the state in which that debtor was domiciled for the greatest portion of the 180 days immediately preceding the 730 day period, or the federal exemptions provided for in § 522(d), unless such an election is prohibited by the applicable state law.

---

[13]This case was filed after October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. All future statutory references are thus to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101-1532 (2005), unless otherwise specifically noted. Any reference to the Bankruptcy Code as it existed prior to the 2005 amendments will be referred to as 11 U.S.C. § ___ (2004) or to "Pre-BAPCPA § ___.

The Stipulation of Facts submitted by the parties provides a rather vague time line, with some critical dates lacking the accuracy necessary to decide the issue. The bankruptcy petition was filed on October 2, 2006. The 730 day period preceding the filing of the petition thus began on October 2, 2004. Pursuant to § 522(b)(3)(A), Debtor would therefore be entitled to claim the exemptions provided for under the law of the state in which she spent the greater portion of the 180 days preceding October 2, 2004, or, stated another way, between April 5, 2004 and October 2, 2004.

Debtor moved from Texas to Missouri during this 180 day time frame. If Debtor established her domicile in Missouri prior to July 4, 2004, she is entitled to claim the exemptions under Missouri law, having spent more than 90 days domiciled in Missouri. Alternatively, if she did not establish her domicile in Missouri until after July 4, 2004, she would be entitled to claim the exemptions under Texas law, if Texas law so allows.

The Court agrees with the standard set forth in Debtor's brief on how courts should analyze where a person's domicile is located. The United States District Court for the District of Kansas has adopted the following analysis:

> Domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there. There is no minimum period of residence required. The requisite intent is to remain at that place for an unlimited or indefinite period of time. A person has only one domicile at a particular time, even though he may have several residences. The court must evaluate all of the circumstances of the case to determine the domicile of a party. No single factor can conclusively establish domicile. Among the factors to be considered are: (1) current residence; (2) voting registration and voting practices; (3) location of spouse and family; (4) location of personal or real property; (5) location of brokerage and bank accounts; (6) memberships in churches, clubs, unions and other organizations; (7) location

7

of a person's physician, lawyer, accountant, dentist and stockbroker; (8) place of employment or business; (9) driver's license and automobile registration; and (10) payment of taxes.[14]

The Court finds that Debtor was clearly domiciled in Texas at the beginning of the 180 day period and that, upon moving to Missouri and taking up residence there, she changed her domicile to Missouri. The critical question is whether Debtor actually changed her domicile, as determined by the multi-faceted test set forth above, before July 4, 2006.

The stipulated facts do not answer this question. This is not a simple case where a debtor leaves one state and arrives and takes up residency in a new state within a day or two. Instead, Debtor sold her house in Texas on May 19, but leased the property back from the new owners until July 31. Notwithstanding that Debtor thus had a legal right to reside in the property until July 31, Debtor apparently moved out of her Texas home no later than June 23, 2006, when a company moved her property out of the Texas home and transported it to Missouri—her intended new home. The Stipulation indicates that she traveled "for approximately one month," and then took up residence in her new Missouri home, but does not indicate when she began to travel, or the precise number of days she spent traveling before arriving in Missouri. Because the standard for domicile includes a physical presence in one state with the intent to remain there, the Court does not believe that Debtor can establish her domicile in Missouri until she actually arrived in Missouri with the intent to live there

---

[14]*In re Hodgson*, 167 B.R. 945, 950-51 (D. Kan. 1994) (internal citations and quotations omitted).

indefinitely. It appears Debtor's domicile would thus remain in Texas until that point. Again, the stipulated facts do not make clear exactly when Debtor arrived in Missouri.

The parties have stipulated that Debtor traveled for "approximately one month," but do not indicate when that month began. If Debtor started traveling shortly after closing on her house in late May 2004, the "approximate month" would expire in time to put her in Missouri by July 4, 2006. Likewise, if the month started when she contracted with the moving company on June 4, 2006, then the one month of travel may have ended on either side of the July 4, 2004 date. Alternatively, if she did not begin traveling until her belongings were moved out of the Texas home on June 23, her month-long travels would put her arrival in Missouri in late July.

It may also be important to know just how close to the one month mark Debtor actually traveled, as a few days could be dispositive. Again, with July 4, 2004 being the critical cutoff date, the Stipulation of Facts are insufficiently precise for the Court to determine whether Debtor was domiciled in Texas or Missouri for the greater part of the relevant 180 day period.

The Trustee, as the objecting party, bears the ultimate burden of proof on the objection to Debtor's exemptions.[15] If Debtor again amends her Schedule C to claim a homestead exemption under Texas or Missouri law, therefore, the Trustee (if she objects) will bear the burden of proving that Debtor's newly claimed exemptions are improper.

---

[15] Fed. R. Bankr. P. 4003(c) and *In re Hodgson*, 167 B.R. at 949.

9

### A. Application of Texas Law

If the applicable facts, after trial or additional stipulations, demonstrate that Debtor was domiciled in Texas for the majority of the 760 to 940 day period before Debtor filed bankruptcy, it certainly appears that Debtor will be limited to the $18,450 federal exemption allowed under § 522(d). Under Texas law, a debtor is entitled to elect either the state exemptions found in the Texas Property Code, or the federal exemptions found in § 522(d).[16] The Court's preliminary research supports the proposition, however, that the Texas homestead exemption is not available for property located outside that state.[17] Because the property Debtor seeks to exempt is located in Kansas, the Texas homestead exemption would be unavailable to Debtor. Therefore, if her applicable domicile were in Texas, she would be forced to utilize the federal exemption found in § 522(d), which is limited to $18,450.

Debtor argues that policy reasons behind the revisions to the Bankruptcy Code by BAPCPA weigh in favor of allowing her to claim the Texas homestead exemption, notwithstanding Texas law to the contrary. The Court agrees that the changes to the domicile requirements for exemptions were primarily, if not solely, intended to prevent debtors from engaging in pre-bankruptcy planning by moving to a more exemption-friendly state shortly before filing for bankruptcy to shield assets they would otherwise be unable to protect in their

---

[16]Texas is not an "opt-out" state that requires debtors to utilize state exemptions, even if federal exemptions may be more beneficial. *Matter of Volpe*, 943 F.2d 1451 (5th Cir. 1991).

[17]*See In re Peters*, 91 B.R. 401 (Bankr. W.D. Tex. 1988) (holding that "Exemptions laws are local in their nature and have no extra-territorial force or operation"). *See also* Tex. Prop. Code. Ann. § 41.002(d) (Vernon 2007)(stating that "The definition of a homestead as provided in this section applies to all homesteads <u>in this state</u> whenever created." (Emphasis added)).

home state.[18]  The Court also agrees that such policy is not furthered by the result that denies Debtor the opportunity to use Texas exemptions, if it is ultimately determined that Texas exemption laws apply, because the homestead exemption available under Texas law is actually more generous than the exemption allowed in Kansas.[19]

That said, nothing in the 2005 revisions to the Bankruptcy Code suggest an intent by Congress to overrule the long line of cases providing that if the law of the applicable state does not give extraterritorial effect to its exemptions, Bankruptcy Courts must enforce that state's law in the same manner and disallow any exemptions to property located outside that state.[20]  To the contrary, Congress provided an express remedy for this very situation by amending § 522(b) to allow an exemption when no state exemption was available.  Congress added the following sentence at the end of § 522(b)(3) to deal with this apparent unfairness: "If the effect of the domiciliary requirement under subparagraph (A) is to render the debtor

---

[18] *See In re Urban*, 375 B.R. 882, 889 (9th Cir. BAP 2007) (noting that § 522(b)'s amendment concerning domicile requirements "was designed to curb the so-called 'mansion loophole' in which debtors contemplating bankruptcy would move to states with generous homestead exemption statutes.") (citing Report of the Committee on the Judiciary, House of Representatives, to Accompany s. 256, H.R. Rep. No. 109-31, pt. 1, at 15-16, 109th Cong., 1st Sess. (2005)).

[19] Both Kansas and Texas provide for an unlimited homestead exemption in terms of value of the property, but Texas allows for debtors to exempt a larger amount of land than Kansas allows.  Texas allows up to 10 acres of urban land or up 200 acres of land of rural land (100 acres if the debtor is a single individual rather than a family), together with any improvements thereon to be exempt. Tex. Prop. Code. Ann. § 41.002(a) and (b) (Vernon 2007).  Kansas limits debtors to 160 acres of farming land, or one acre inside the limits of any incorporated town or city, together with any improvements thereon.  *See* K.S.A. 60-2301.

[20] *See, e.g.*, *In re Adams*, 375 B.R. 532 (Bankr. W.D. Mo. 2007) (refusing to give extraterritorial effect to Florida exemption laws in a bankruptcy proceeding); *In re Dicks*, 341 B.R. 327 (Bankr. M.D. Fla. 2006) (refusing to give extraterritorial effect to Florida exemption laws in a bankruptcy proceeding); *In re Ginther*, 282 B.R. 16 (Bankr. D. Kan. 2002) (refusing to give extraterritorial effect to Kansas exemption laws in a bankruptcy proceeding); and *In re Peters*, 91 B.R. 401 (Bankr. W.D. Tex. 1988) (refusing to give extraterritorial effect to Texas exemption laws in a bankruptcy proceeding).

11

ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d)."

One commentator explains the operation of this sentence as follows:

> However, if the effect of section 522(b)(3)(A) is to render the debtor ineligible for any exemption, the debtor may elect to exempt property of the kind specified under section 522(d). The debtor is therefore permitted to exempt property under the federal exemption system in this situation notwithstanding that the state of the debtor's domicile as determined by section 522(b)(3)(A) is an opt-out state. This may arise if the exemption law of the debtor's domicile requires that the debtor reside within the state to claim exemption rights or if the state law does not permit an exemption to be taken on property located outside the state.[21]

Accordingly, based upon the new exemption-saving language added to the Bankruptcy Code by BAPCPA, it appears that Congress specifically recognized that this very scenario could arise, and addressed that concern by adding the new language.

The Court cannot ignore the clear provisions of the Bankruptcy Code, even if the particular facts of this case do not align perfectly with the assumed intent behind the new statute. Debtor will have to address her fairness concerns to Congress, the branch of government vested with authority to cure any unfairness alleged to exist in a given statute.

Further support for the argument that Texas' homestead exemption laws would be unavailable to Debtor was recently discussed in a similar context by Judge Dow in *In re*

---

[21] 4 *Collier on Bankruptcy* ¶ 522.06 (Alan N. Resnick & Henry J. Sommer eds.-in chief, 15th ed. rev. 2007). *See also In re Nickerson*, 375 B.R. 869 (Bankr. W.D. Mo. 2007) (holding that Kansas exemptions could not be applied to land located in Missouri, and, therefore, the exemption saving provision in § 522(b)(3) operated to allow the Debtor to use the federal exemptions, even though Kansas is an opt-out state) and *In re Fabert*, Case No. 06-21539, Memorandum Opinion and Order at *8, *13 (January 9, 2008) (and cases cited therein).

12

*Adams*.[22] In *Adams*, the court refused to give extraterritorial effect to Florida's exemption laws in a case filed in Missouri because Florida law clearly provided that its exemptions could only be applied to property located within Florida. The court noted that the debtors seemed to be misconstruing § 522(b)(3) and that:

> That section does not require that Florida's *exemptions* be applied in this case, rather that Florida's *exemption law* be applied. As discussed above, Florida exemption law is that its exemptions not be given extraterritorial effect. Therefore, Florida's exemptions are not applicable to a homestead and property located outside of Florida, and Debtors cannot claim their exemptions under Florida law for property located in Missouri.[23]

This distinction between "exemptions" and "exemption law" is vitally important. The Bankruptcy Code does not merely allow a debtor the opportunity to claim certain state's exemptions. Instead, it allows a debtor the opportunity to use a given state's exemption laws, which includes that state's prohibitions against extraterritorial effect.

Based upon the fact that Texas exemptions cannot, under Texas law, be given extraterritorial effect, the Court preliminarily believes that if Texas law applies in this case, then Debtor would only be entitled to the federal homestead exemption in the amount of $18,450.[24]

---

[22] 375 B.R. 532 (Bankr. W.D. Mo. 2007).

[23] *Id.* at 535 (emphasis in original).

[24] 11 U.S.C. § 522(d)(1).

13

## B. Application of Missouri Law

The application of Missouri law on the issue of extraterritorial effect is a little less settled, although there exists some persuasive authority. The homestead exemption available under Missouri law is limited to $15,000.[25] Unlike Texas, Missouri is an "opt-out" state whose law prohibits debtors from utilizing the federal exemptions found in § 522(d) to protect property in a bankruptcy proceeding.[26] Therefore, under normal circumstances, a debtor is limited to the Missouri exemption.

There appears to be some conflicting precedent as to whether Missouri exemption laws can be applied to protect property located outside the state of Missouri. In *State Bank of Eagle Grove v. Dougherty*,[27] the Missouri Supreme Court held that "[t]he right of homestead is purely a creature of statute, and, while such a right has been created by statute in all or most states, such statutes can have no extraterritorial force, and must be construed to apply to homesteads within the state of enactment."[28] The *Dougherty* decision, however, is over 100 years old and, more importantly, involved a statutory homestead exemption that was considerably different than the current version found at Mo. Stat. Ann. § 513.475.

In *Dougherty*, the plaintiff had obtained a judgment against the defendant prior to the date defendant sold his homestead in Iowa and moved to Missouri. At that time, the Missouri

---

[25]Mo. Rev. Stat. § 513.475.

[26]Mo. Rev. Stat. § 513.427.

[27]66 S.W. 932 (Mo. 1902).

[28]*Id.* at 932.

14

homestead exemption did not exempt property from debts that were incurred prior to the purchase of the homestead, unless the newly purchased homestead was paid for with proceeds from the sale of a previously exempt homestead. The Missouri Supreme Court held that because the prior homestead was located in Iowa rather than Missouri, the fact that the defendant used the proceeds from the sale of the Iowa property to purchase a new homestead in Missouri did not exempt the Missouri homestead from execution in favor of the judgment that was obtained prior to its purchase. The court held that for the provisions of Missouri law that would otherwise allow for the exemption of the Missouri property to apply in that case, the prior homestead had to be located in Missouri as well.

The current version of the Missouri homestead exemption statute has no language similar to that faced by the Missouri Supreme Court in 1902. Under current Missouri law, the outcome of *Dougherty* would almost certainly have been different. Although the language used by the Missouri Supreme Court, as quoted above, appears to be dispositive in this case, both the facts of this case and the applicable law are considerably different, making *Dougherty* potentially distinguishable.

A case with facts similar to the one currently before this Court was decided in favor of the debtor in *In re Woodruff*.[29] In *Woodruff*, the debtor attempted to exempt property he held in Mississippi under Missouri's homestead law. The trustee objected, arguing that

---

[29]2005 WL 1139891 (Bankr. W.D. Mo. 2005).

15

Missouri's homestead law had no extraterritorial effect and could not be applied to property located outside the state. In overruling this objection, the court held

> Missouri's exemption laws are liberally construed in favor of the debtor. Since Missouri statutes and case law are silent in regards to the extraterritorial effect of Missouri's homestead exemption, and since [the debtor] has proved his intent to return to Bude, Mississippi, I find that his Mississippi residence qualifies as a homestead under Missouri law.[30]

In so holding, the bankruptcy court did not discuss the *Dougherty* decision.

It is unclear whether the *Woodruff* court considered *Dougherty* distinguishable, either factually or legally, or whether the court was simply unaware of that decision. However, this Court finds it persuasive that a bankruptcy judge sitting in Missouri, who must constantly look to and apply state law, has specifically held that property held outside of Missouri can be exempt under Missouri's homestead law.

Having provided the parties with the benefit of some of the Court's analysis and research on the remaining issues, and given the posture of this case, the Court obviously declines to make further findings of fact or conclusions of law on the issue of whether Missouri's homestead law has extraterritorial effect. If it is determined, after a trial or further stipulations, that Missouri law applies, the parties will be provided an opportunity to brief the issue of the extraterritorial effect of Missouri's homestead law.[31]

---

[30]*Id.* at *3 (internal citations omitted).

[31]The Court does note that the Trustee appears to agree with *Colliers on Bankruptcy* and *In re Nickerson*, supra, both of which indicate that if a homestead exemption is not available to property located outside the applicable state, a debtor is nonetheless entitled to claim the federal exemptions in § 522(d) pursuant to the exemption-saving sentence added at the end of § 522(b)(3).

**III. CONCLUSION**

The Court sustains the Trustee's objection to the exemptions Debtor has claimed under Kansas law in both her original and amended Schedule C. Debtor is barred from attempting to exempt property under Kansas law because she was not domiciled in Kansas for the 730 days immediately preceding the filing of her bankruptcy petition.

The Court also believes, based on its initial review of applicable law, that if Debtor was domiciled in Texas for the larger portion of the 180 days prior to the 730 days preceding the filing of the bankruptcy case, she will be forced to take the homestead exemption found in § 522(d)(1) (in the amount of $18,450) because the Texas homestead exemption has no extraterritorial effect. If the Debtor is found to have been domiciled in Missouri for the greater portion of that 180 days, it is unclear, without further briefing and analysis, whether Debtor would be entitled to claim the Missouri exemption in the amount of $15,000, or the federal exemption in the amount of $18,450.

The Court will allow Debtor **twenty (20)** days to file a second amended Schedule C to claim the subject real property exempt under either Texas law or Missouri law, depending on in which state she claims she was domiciled for the majority of the relevant 180 days. The Court encourages the parties to attempt to resolve the factual dispute as to when Debtor's domicile changed from Texas to Missouri prior to requiring an amended Schedule C, a further Stipulation of Facts, or an evidentiary hearing and briefs, since it is now fairly clear to the Court that Debtor will ultimately be entitled to claim an exemption in the amount of $15,000

Case 06-40990    Doc# 67    Filed 01/18/08    Page 17 of 18

or $18,450. Given this narrow difference, the parties may find that settlement is in their mutual best interest.

**IT IS, THEREFORE, BY THE COURT ORDERED** that the Trustee's Objection to Debtor's Homestead Exemption and All Other Exemptions[32] and Trustee's Objection to Debtor's Amended Schedule C, Homestead Exemption[33] are sustained to the extent Debtor relied on Kansas exemption laws.

# # #

---

[32]Doc. 19.

[33]Doc. 29.

18

Case 06-40990    Doc# 67    Filed 01/18/08    Page 18 of 18